UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALEX MENDOZA, et al.,<br><br>Defendants. | No.  1:14-cr-00154-NONE<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. No. 276) |

Pending before the court is defendant Alex Mendoza's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  The motion is largely based on defendant's medical condition and the risks posed to him by the ongoing coronavirus ("COVID-19") outbreak.  (Doc. No. 276.)  For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On October 6, 2016, defendant Mendoza entered his plea of guilty to conspiracy to distribute and possess with intent to distribute 50 grams or more of actual methamphetamine, as well as cocaine and heroin in violation of 21 U.S.C. §§ 846 and 841(a)(1), as alleged in Count One of the indictment.  (Doc. Nos. 190; 192 at 2.)  The evidence gathered as a result of the criminal investigation conducted by the Drug Enforcement Administration (DEA) suggested that defendant Mendoza's "role in the conspiracy was significant, wherein he was the leader of the

1   conspiracy and ran a very sophisticated drug trafficking operation." (Doc. No. 236 (Presentence
2   Report) at 6.) Specifically, the evidence showed that defendant purchased acetone from a Home
3   Depot store in order to manufacture methamphetamine and on several occasions directed others to
4   traffic the drugs that were manufactured. (*Id.* at 5–6.) Based upon evidence seized as a result of
5   searches conducted of defendant's vehicle and residence, defendant Mendoza was found to be
6   responsible for the parties' agreed upon drug quantities of 9 kilograms of "ice"
7   methamphetamine, 3 kilograms of heroin, and 4.8 kilograms of cocaine. (*Id.* at 7.) It was
8   determined that under the U.S. Sentencing Guidelines defendant Mendoza's adjusted offense
9   level was 39 and his criminal history category was II, resulting in an advisory sentencing
10  guideline range calling for a sentence of 292 to 365 months imprisonment. (*Id.* at 16.)
11  Nonetheless, upon consideration of defendant's age, challenging childhood, limited education and
12  lack of prior prison commitments along with other 18 U.S.C. § 3553(a) factors, the presentence
13  report recommended a downward variance from the advisory guideline sentencing guideline
14  range to a sentence of 135 months. (*Id.*) That recommendation was consistent with lowest
15  sentence defendant Mendoza agreed to seek as part of his plea agreement with the government.
16  (Doc. Nos. 192 at 236 at 14, 16. On January 23, 2017, the court followed the recommendation of
17  probation and the defense and sentenced defendant to 135 months in the custody of the U.S.
18  Bureau of Prisons (BOP) with a 60 month term of supervised release to follow. (Doc. Nos. 241;
19  242 at 2–3.)
20          Defendant is currently serving his sentence at the BOP's contracted McRae Correctional
21  Institute in McRae Helena, Georgia ("CI McRae"). (Doc. No. 276 at 2.) On June 25, 2020,
22  defendant, appearing pro se, filed the pending motion for compassionate release pursuant to 18
23  U.S.C. § 3582(c)(1)(A). (*Id.*) The court referred defendant's pro se motion to the Federal
24  Defender's Office. (Doc. No. 277.) On July 14, 2020, the Office of the Federal Defender filed a
25  notice of intent not to supplement defendant Mendoza's pro se motion. (Doc. No. 281.)
26  Thereafter the court issued an order establishing a briefing schedule on the pending motion.
27  (Doc. No. 283.) On July 23, 2020, the government filed its opposition to the motion. (Doc. No.
28  284.) Defendant did not file a reply brief, and the time to do so has passed.

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)   extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing

---

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

4

Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, __ F. Supp.3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be

"consistent with" the sentencing factors set forth in §3553(a)).

**A.     Administrative Exhaustion**

On May 1, 2020, defendant submitted an administrative request to the Warden at CI McRae seeking his compassionate release. (Doc. No. 284-1 at 7–9.) On May 26, 2020, the Warden denied defendant's request and defendant received the denial three days later. (*Id.* at 6, 10.) Because his request was denied within 30 days, defendant was required to appeal the denial of his request to the BOP's Regional Director pursuant to 28 C.F.R. § 542.15(a) in order to exhaust his administrative remedies. *See supra* note 1. Nonetheless, the government concedes that administrative exhaustion has been satisfied here. (Doc. No. 284 at 4.) Accordingly, the court will address the merits of defendant Mendoza's motion for compassionate release.

**B.     Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

/////

/////

> The defendant is
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations. *See, e.g.*, *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[4] In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788, at *1 n.1 (N.D. Cal. Apr. 10, 2020).

Here, defendant Mendoza argues that extraordinary and compelling reasons warranting his compassionate release exist due to the general risk posed by COVID-19. (*See* Doc. No. 276 at 2

---

[4] However, because defendant Mendoza is only 30 years old (Doc. No. 236 at 3), his age and age-related factors do not play a role in consideration of his pending motion.

(defendant describing his inability to socially distance or regularly wash hands and arguing: "There is not [a] cure for this disease even. So I ask you dear judge now to please allow me to reducing my sentence to time served.").) Defendant Mendoza does not argue that he suffers from any health condition that places him at greater risk for becoming severely ill were he to contract COVID-19. (*See passim id*; Doc. No. 284 (Government's Opposition) at 9 ("Mendoza has no underlying health conditions; he is otherwise a health 30-year-old man.").) However, in order to qualify for compassionate release, defendant must demonstrate that he is suffering from some "serious" medical condition "that substantially diminishes [his] ability . . . to provide self-care" in FCI Terminal Island and the medical condition is one "from which he . . . is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Defendant's motion falls far short in this regard. Defendant does not identify any medical condition that he suffers from, let alone a "serious" one. At the time of his sentencing, it was reported that defendant "experiences positive physical health, with no current or past problems." (Doc. No. 236 (Presentence Report) at 11.) The court also notes that defendant, after being represented by the Federal Defender's Office in connection with the pending motion, did not file a supplemental or reply brief raising any medical conditions that might not be apparent from the current record. As the Third Circuit recently stated in two cases, the general risk of COVID-19 to a federal prisoner by itself is not a sufficient reason for the granting of compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"); *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit.").

The court agrees with this conclusion. Defendant cannot establish extraordinary and compelling reasons for his release based on the general risk of COVID-19, an argument that would apply to essentially every federal prisoner. Therefore, the court will deny defendant's pending motion for compassionate release pursuant to § 3582(c)(1)(A).

/////

**C.     Consistency With the § 3553(a) Factors**

Because the pending motion fails to establish extraordinary and compelling reasons justifying compassionate release in this case, the court need not address whether any reduction in defendant's sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[5]

## CONCLUSION

For the reasons explained above, defendant's motion for compassionate release (Doc. No. 276) is denied.

IT IS SO ORDERED.

Dated:   **October 5, 2020**                              /s/ Dale A. Drozd
                                                            UNITED STATES DISTRICT JUDGE

---

[5] Nonetheless, the court would note that defendant Mendoza was sentenced to the 135 month term of imprisonment for which he argued at the time of his sentencing. Moreover, such a sentence was less than half of the prison sentence called for even under the low end of the sentencing guideline calculation and was imposed despite the finding that the defendant was a leader or organizer of this criminal activity that involved four or more participants or was otherwise extensive. Finally, despite that leadership role, defendant Mendoza received a sentence only fifteen months greater than those imposed upon several of his co-defendants.